LINDSAY H. DURHAM, plaintiff in error, vs. JACOB N. SESSIONS, defendant in error.

The disolution of an injunction upon the coming in of the answer, though the equity of the bill be sworn off, is not matter of right, but of discretion. In the present case, the discretion was properly exercised by retaining the injunction. The equity of the bill was not fully sworn off.

In Equity. In Lee Superior Court. Motion to Dissolve Injunction. Decided by Judge CLARK. At Chambers, February, 1866.

This bill was filed by Sessions against Durham in January, 1866. Omitting several details, of subordinate consequence, the case made by it may be briefly stated as follows:

The complainant, on the 22d of March, 1860, obligated himself in writing, that, in the event he recovered two certain lots of land, then in litigation, he would sell and convey the same to the defendant at $8.50 per acre; and that he would make the titles on the 1st of January, 1861, or as

soon as the pending suit was settled. In February, 1865, the suit not being ended, and there being an opportunity to compromise it, the parties, by parol agreement, fixed the price of the land, anew, at $20,000 in Confederate States currency, of which $2,000 was to be paid at once, and be used in effecting the compromise, and the balance at the March Term of Lee Superior Court, then next ensuing, or sooner, if the complainant wanted it. It was stipulated that defendant should pay promptly. He did pay the two thousand dollars, and the same was used by the complainant in compromising the suit. Another payment was made, reducing the debt to $17,500. At March Court, the suit was entered of record settled, and complainant, being ready to receive the balance and make titles, so informed defendant, who replied that he did not have the money with him, and requested complainant to call at his house in a day or two, and he should be paid. Complainant called, accordingly, the subsequent Monday, the 3d of April, taking with him a deed already prepard ; and defendant said he could pay $10,500 in currency and the remaining $7,000 in Confederate States coupon bonds. Complainant refused the bonds, and defendant then proposed to deposit them, to the amount of $12,000, as collateral security for the payment, during that week or within ten days, of the $7,000 in currency. To this complainant acceded, and the agreement, at defendants' suggestion, was reduced to writing by a Mr. Holland, and complainant, understanding the writing to represent the agreement truly as here stated, signed it. The parties then went with the money and bonds to the house of G. M. Stokes, where complainant executed his deed, and the money, bonds, and deed were all deposited with Stokes, with the distinct understanding, that during that week or within ten days, the defendant was to deliver to Stokes $7,000, in Confederate currency, and receive the deed and bonds. Two or three days after this, he delivered about $2,500 to Stokes, but in a day or two thereafter borrowed it nearly all back, and neither returned that borrowed nor delivered any more

within the ten days; so that none, or only a very small part, was with Stokes when the time expired. Several days later, he delivered a portion, but a large part remained undelivered until after the surrender of General Lee was known and Confederate currency had become worthless, and the defendant knew it to be so. He borrowed of Stokes $600, of the money, for which the latter refused to take any note, saying it was of no value, and defendant could pay it back or not, as he liked. On receiving the last of the currency, Stokes, in ignorance of the complainant's rights in the premises, delivered the deed to defendant, of which delivery complainant knew nothing for ten days or two weeks after it occurred. Complainant did not take the deposit from Stokes until long after the surrender of the armies, and dissolution of the Government of the Confederate States, and then only at the urgent request of Stokes, and to get it out of his way. He received from Stokes, at the same time, the writing which he (the complainant) had signed as evidence of the agreement in respect to the bonds deposited as collateral security; and the same would be produced, but has been lost or mislaid. Owing to the unsettled state of the country and the doubtful value of property, the complainant forbore, for some time, to speak to defendant on the subject; but at length, about September, 1865, quiet and confidence being somewhat restored, certain propositions were made by each party, which failed, however, to result in any adjustment. Complainant being still in possession of the land, which is now worth $4,000, and the defendant threatening to proceed by summary process to turn him out, this bill was filed. It offers payment of the full value of all the currency received by complainant, and prays for an injunction to restrain the defendant from proceeding, at law, to dispossess him; also, for a decree that the deed be delivered up and cancelled, and for general relief.

The injunction was granted.

Afterwards the defendant answered the bill. How far the answer modifies the case made by the complainant, will

appear from the following summary, all non-essential particulars being omitted as before.

According to the answer, the complainant agreed to take one-half of the $20,000 in Confederate coupon bonds; and, save as to the $2,000 which was used in compromising the suit, there was no time fixed by the contract for payment. The defendant expected to pay whenever titles were made. He did not decline to pay at March Court, but, on the contrary, offered to do so; and it was the complainant who postponed the settlement till the following Monday, even against the propositions of defendant to bring it on earlier. When the complainant came, at the time he had appointed, he refused to take the bonds as he had agreed to do; and thereupon the defendant, after paying him $10,500 in currency, turned over to him, as collateral security for the remaining $7,000, bonds to the amount of $12,000. Defendant did not agree to pay this balance within ten days, or any definite time. The agreement made was, that if the complainant should want the currency before it was paid, he was to give the defendant ten days notice, and then, if it was still unpaid, was to be at liberty to sell the bonds, and out of the proceeds retain the amount, paying to defendant the overplus. This agreement was inserted accurately in a receipt for the bonds, which Mr. Holland wrote, and the complainant signed. The receipt was held by defendant until he surrendered it to Stokes, upon receiving back the bonds; and the answer calls upon the complainant to produce it. The complainant at no time gave the notice provided for in the receipt, nor made any demand upon defendant for said balance: if he had done so, the defendant could and would have procured and paid it at once.

The defendant made no agreement with the complainant for the bonds, money, or deed to be deposited with Stokes; nor was the deed, in fact, deposited with him, or put under his control, but was delivered directly to defendant, in whose possession it has ever since remained.

According to defendant's recollection, he paid to Stokes,

the second or third day after the bonds were left with him, $5,000, and the whole of the $7,000 before news of General Lee's surrender was received. Though not recollecting the date of the last payment, he is positive that Confederate money was current for some time thereafter. He does not remember whether or not Stokes made the remark imputed to him in the bill; but does remember, that some days afterwards, when he offered to repay the money to Stokes, the latter took it. At the time he borrowed of Stokes, and later, the money was not utterly worthless, but was current in the payment of debts and the purchase of property. The answer fixes the present value of the land at $3,500 or $4,000 as a part of defendant's plantation, but at only $2,500 as a separate tract.

The defendant, having thus answered, moved to dissolve the injunction, upon the grounds, (1.) that the equity of the bill was sworn off; and (2.) that there was no equity in the bill, because the complainant might have redress at common law.

Upon the hearing of this motion, complainant produced, among others, the affidavits of J. A. Brown and G. M. Stokes.

*Brown* stated, that in the spring of 1865, after it was known that Generals Lee and Johnston had both surrendered, and Confederate currency had become worthless, the defendant called on him to borrow $5,000 in that currency, stating that he wanted to pay complainant with it, and remarked, "I want to settle with Sessions now;" and that he, Brown, loaned him the money, not caring whether it was ever returned or not; but he repaid it in a few days.

*Stokes* deposed as follows: "About the first days of April, 1865, J. N. Sessions and L. H. Durham came to his house and said, that said Sessions had sold to said Durham his land, four hundred acres, upon which he lived, in first district of Lee, and that they wished to deposit a package of Confederate treasury notes, and another of eight per cent Confederate bonds,—the former of which I understood from them to contain from $10,000 to $12,000, and the latter

$12,000—with instructions that said Durham was to pay to deponent $7,000 in Confederate treasury notes, in ten days, or when Sessions wanted it, which having been done, deponent was to deliver said eight per cent bonds to said Durham. In two or three days, Durham paid to deponent $2,500 or $3,500, which amount was endorsed by deponent on a paper which he, deponent, understood to be the condition of deposit, and, in eight to twelve days, deponent received $2,000 more, which amount was also placed on the back of said paper; and in two or three weeks afterwards, said Durham paid the balance of the seven thousand dollars, deponent delivering to him the said eight per cent bonds; and, at the same time, deponent loaned said Durham five or six hundred dollars, and refused to take said Durham's note for it, saying it made no difference if he never returned it, as he considered it worthless. Deponent received the last payment because he thought the notes no worse than the bonds. Deponent was of the impression, all the time, that the deed to said lands was deposited with these notes and bonds; not that he remembers having the deed in view at any time during the deposit, for he even does not remember signing the deed as a witness, but knows he did, from having seen his name in it since, but from the general notion that everything connected with the transaction was deposited in his safe; and he here states that he is not certain whether the paper which he understood to contain the terms of the deposit, and upon which, as aforesaid, he endorsed the payments as Durham made them, was in the deposit, or held by Durham; but thinks it was deposited, and, after the $7,000 had all been paid, was delivered to said Sessions with the package of treasury notes.

Deponent saw said Sessions every day or two during said deposit, who occasionally asked if Durham had paid the money all in; and some several weeks after the last payment, deponent said to Sessions, one day, that his safe was crowded with worthless deposits, and he would like him to take

his away; whereupon Sessions called and got his package of treasury notes."

The defendant likewise produced affidavits—those of A. B. Duncan, W. W. Holland, and the said G. M. Stokes.

*Duncan* and *Holland* stated that they were present when the payment of $10,500 was made, and the bonds were turned over to complainant as collateral security. Duncan heard the agreement respecting the bonds and the balance of $7,000, and his version of it is the same as that given in the defendant's answer. Holland represents the receipt which the complainant signed on the occasion as the answer does. They both depose, that after this transaction, which took place at defendant's house, the parties went to Stokes's to get him to attest the deed, and that when defendant returned home he brought the deed with him.

*Stokes* deposed as follows: "About the first week in April last, J. N. Sessions and L. H. Durham came to his house to perfect a land trade between them. Deponent signed said deed officially as a witness, but does not remember doing it, but knows he did it from having seen the deed and his signature since—was under the impression that said deed was delivered to him (deponent) at the time, but after examining himself closely, can not remember having seen the deed at that time, or its having been delivered to him. There was left, at the said time, by the said parties, a package of Confederate treasury notes, which they represented as containing some $8,000 to $12,000, which said Durham had paid to said Sessions on the land, and a package of Confederate bonds, represented as $12,000. Deponent being instructed by them at the time, that when said Durham paid in $7,000 in currency, (which they said was to be done in ten days, or when Sessions wanted it) then the $12,000, in bonds, was to be returned by deponent to said Durham. Said Durham paid $2,500 or $3,500 in two or three days, and $2,000 more in eight or ten days, and the remainder in about fifteen or twenty days, as well as can be remembered at the time, at

which last payment said bonds were delivered to said Durham.

The whole amount of money, including that first deposited, remained in deponent's possession, all the time, until some time after the last was paid in, when Sessions received it all, except, perhaps, some taken out by said Sessions for immediate use,—the amount not recollected; and, really, deponent does not recollect clearly his taking any out, and having been in the habit of receiving deposits often, to accommodate [his neighbors, he did not examine contents of deposited packages, and, therefore, remembers nothing but facts in this case connected with a peaceable settlement of the matter, having no thought of litigation."

The Judge refused to dissolve the injunction; and that is assigned as error.

VASON & DAVIS and WARREN, for plaintiff in error.

WEST, for defendant.

HARRIS, J.

The record presents only one question for our determination: Was Judge Clark right in refusing to dissolve the injunction granted at the instance of Sessions? We think there never was a clearer proposition. The equity of the bill was not sworn off: had it been, in the strongest terms, it is not a matter of right that the injunction should then go. At all times, and in all cases, the retaining or dissolution of an injunction must, to attain the end of a Court of Equity, rest in the sound discretion of the Judge of the Court in which the cause is pending. There are many cases in which a thorough investigation of the facts in controversy should be had before a special jury, before dissolving the injunction in the cases; and this is palpably one of them: it is idle,—it is more than idle—to talk of a party having equitably performed his contract, who, (after delaying, from day

37

to day, payment in a currency hourly depreciating) when a dismal catastrophe occurs, itself indicative of the certain, aye, sudden death of the Southern Confederacy, is found borrowing of a Mr. Brown a large amount of Confederate treasury notes—having become by the surrender of Genls. Lee and Johnson worthless—saying, at the time, "I want to settle with Sessions *now*."

If the contract was changed, from a specie basis, to one to be paid in currency at stated times, the party failing to pay must bear the depreciation. Whenever this case shall be tried by a jury, we suggest that the Circuit Judge call the attention of that body to the forcible opinion of Judge Jenkins, in the case of *Smith vs. Bryan*, reported in 34 *vol. Ga. R., p.* 65, as embodying the proper equitable rule to be applied by them in the adjustment of the several payments alledged to have been made.

Sessions, in the testimony in the case, is said to be a plain, weak-minded man; and, whilst it is not the office of a Court of Equity to act as guardian of men in this class, in making their contracts, the principles which constitute the jurisdiction it exercises, forbid that, when the case is brought before it, it should allow ignorance or imbecility to be over·reached.

Judgment affirmed.